# DISTRICT COURT OF THE VIRGIN ISLANDS

# DIVISION OF ST. THOMAS/ST. JOHN

| | |
|---|---|
| HAMMERHEAD CONSTRUCTION LLC,<br><br>                  **Plaintiff,**<br>   v.<br><br>HARVEY HOFFMAN,<br>and JANICE HOFFMAN,<br><br>                  **Defendants.**<br>_____ | 3:23-cv-00014-RAM-EAH |

**TO:**    Ryan C. Meade, Esq.
         A. Jeffrey Weiss, Esq.

## ORDER

**THIS MATTER** comes before the Court on "Defendants Motion to Exclude Richard G. Taylor from Testifying as Plaintiff's Expert Witness" (the "Motion"), filed on July 3, 2024 by Defendants/Counterclaim Plaintiffs Harvey Hoffman and Janice Hoffman (the "Hoffmans"). Dkt. No. 107. The Hoffmans argue that the expert report submitted by Mr. Taylor was not reliable and also did not satisfy the "fit" factor under Fed. R. Evid. 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579 (1993). Plaintiff/Counterclaim Defendant Hammerhead Construction LLC filed a Response, Dkt. No. 128, and the Hoffmans filed a Reply, Dkt. No. 149. For the reasons that follow, the Court will deny the Hoffmans' Motion.

## BACKGROUND

### I. Hoffmans' Motion to Exclude

In the Motion, Defendants state that their Counterclaims in this case concern the work of Hammerhead and Stephen Rivera (a Counterclaim Defendant and sole member of

*Hammerhead Construction v. Hoffman*
3:23-cv-00014-RAM-EAH
Order
Page 2

Hammerhead), inter alia, in repairing and rebuilding the hurricane-damaged main hip roof and shed roofs at the Hoffmans' property on St. Thomas, Virgin Islands. Dkt. No. 107 at 2-3.

On July 6, 2021, Mr. Walter Basnight, the Hoffmans' expert, prepared a report in which he evaluated the structural conditions concerning the framing of the roofs (and decks) of the Hoffmans' home. Dkt. No. 107 at 3; Dkt. No. 108-1. The Basnight Report relied on "a map produced in 2017 by FEMA in accordance with ASCE 7-16" to determine design wind velocity. Dkt. No. 108-1 at 3. The Basnight Report also relied on the "2018 International Residential Code and the USVI Building Code. Standard design Dead Loads, Live Loads and Wind Loads were applied to the structure's framing components to determine if in-place members were adequate to resist the required flexural stress." *Id*. at 6.  Finally, the Report relied on an unidentified Virgin Islands Department of Planning & Natural Resources ("DPNR") regulation regarding roof rafters. *Id.* at 7. While the Basnight Report mentioned that the site location for the Hoffmans' house was "determined to have a design wind velocity of 210 mph," *id*. at 3, it mentioned nothing about any required wind velocity that the Virgin Islands had adopted as a minimum standard that residential roofs should have been built to withstand.

On January 22, 2024, Hammerhead produced a report from Richard G. Taylor, dated October 26, 2022, entitled "Structural Report on Hoffman Residence" that contained Mr. Taylor's expert opinions, the basis and reasons for them, the facts or data considered by him, the exhibits used to summarize or support his opinion, and Mr. Taylor's qualifications. Dkt.

*Hammerhead Construction v. Hoffman*
3:23-cv-00014-RAM-EAH
Order
Page 3

No. 107 at 2; Dkt. No. 107-1. Mr. Taylor's Report was limited to the reconstruction of the main hipped roof and the West Deck and North Deck Roofs (including installation of deck posts). He did not visit the site. *Id.* at 3. According to Defendants, Mr. Taylor summarized part of Mr. Basnight's Report, stating:

> The report by Mr. Basnight lists ASCE 7-16 Minimum Design Loads for Buildings and Other Structures along with the 2018 version of the International Residential Code and the USVI Building Code. We will limit our comments to be consistent with those Codes. While we do not agree with the method used to calculate the wind loads in [Mr. Basnight's Report], we will use the same loads to avoid unnecessary conflicts.

*Id.* (quoting Dkt. No. 107-1 at 5). However, Mr. Taylor "incorrectly state[d]" that Mr. Basnight found "no fault with the roof member sizes" other than certain hip beams that he indicated were undersized. Defendants argue that Mr. Basnight found "much more" and considered the work done by Hammerhead to be defective and not in compliance with Code. *Id.*

Defendants cite a ten-page Affidavit by Mr. Basnight dated June 24, 2024, attached to their Motion, in which he opined that Hammerhead's work was defective. *Id.* at 3-4, citing Dkt. No. 109-1 (Basnight Aff.). Over 60 pages of exhibits were attached to Mr. Basnight's Affidavit. Defendants note that Mr. Basnight made site visits, took measurements, and made "a structural analysis of the structure following the load path," analyzing the structural capacity of the roofs and decks based on the current building codes, along with a "wind analysis" based on the property's location and topography. *Id.* at 4 (citing the Basnight Report and Affidavit). In contrast, Mr. Taylor took no measurements and conducted no such analysis. He based his entire opinion on his review of the International Residential Code

*Hammerhead Construction v. Hoffman*
3:23-cv-00014-RAM-EAH
Order
Page 4

("IRC") and his "unsubstantiated" claim that "there is unlimited literature on double shear values of bar through word members," but provided no such literature. *Id.*

In addition to the alleged lack of structural analysis, Defendants contend that Mr. Taylor used the "wrong legal standards in reaching his opinion," as testified to by Mr. Basnight at his deposition, given that the IRC is not applicable where wind speeds exceed 140 mph. *Id.* at 5, citing Dkt. No. 107-2 (12/14/23 Basnight Dep.). They then cite several sections of the Virgin Islands Building Code, including 29 V.I.C. § 293 that adopts the meaning of the terms used in the International Building Code ("IBC"), the IRC, the International Fire Code, and three other Codes; 29 V.I.C. § 311(a), that adopts the revised versions of the all the Codes mentioned in § 293; and 29 V.I.C. § 311(I) that provides, inter alia, that "A basic wind speed of 145 miles per hour is adopted as a minimum standard for the entire territory of the Virgin Islands." *Id.* at 5-6. The edition/year of these Code provisions is not indicated.

Pursuant to the three factors required to qualify as an expert under Fed. R. Evid. 702—qualifications, reliability, and fit—Defendants acknowledge there is no issue as to Mr. Taylor's qualifications. *Id.* at 7. Rather, they contend that the reliability and fit factors were not met. *Id.* at 7-14. Reading all of the Code provisions together, Mr. Taylor's testimony was not reliable because he used the wrong legal standard. *Id.* at 9-10. His analysis should have started with § 311(I), but he disregarded it, using the 2018 IRC and 2021 IBC. *Id.* at 9. The IRC standards Mr. Taylor used were limited to structures designed only to withstand wind speeds not exceeding 140 mph. *Id.* According to the IRC, when wind speeds exceed 140 mph,

*Hammerhead Construction v. Hoffman*
3:23-cv-00014-RAM-EAH
Order
Page 5

the design of buildings for wind loads shall be in accordance with ASCE Minimum Design Loads. *Id.* (quoting Mr. Basnight's attached Affidavit). According to the Affidavit, Mr. Taylor's disregard of 29 V.I.C. § 311(I) caused his report and opinion to be based on the wrong law and wrong legal standard, meeting neither the reliability nor fit factors. *Id.* at 9-10.

Defendants also contend that Mr. Taylor's opinion is not reliable because he did not undertake the kind of analysis that Mr. Basnight did, ignored the significant defects Mr. Basnight found, and did not provide certain analyses (of the exterior walls and other matters). *Id.* at 12-13. Thus, he should be precluded from testifying as he failed to use a reliable methodology and relied on unsubstantiated factual assumptions. *Id.* at 13. They assert that the testimony is not relevant (going to the 'fit' factor) because it will confuse a jury, given that Mr. Taylor used the wrong legal standard as the basis for his opinion. *Id.* at 8.

**II.      Hammerhead's Response**

In its Response, Hammerhead asserts that Mr. Taylor met the three requirements of qualification, reliability, and fit for admitting him as an expert. Dkt. No. 128 at 1. First, Mr. Taylor's qualifications were not at issue, given the Hoffmans' concession on that factor. *Id.* at 3. As to reliability, Mr. Taylor's opinions were based on his education and experience, and made specific reference to the appropriate code and engineering resources he relied on in forming his conclusions regarding the engineering and construction of the residence's roof. *Id.* at 4. He based his calculations on the reported measurements from the residence, and whether he took the measurements or they were provided by the Hoffmans does not change

*Hammerhead Construction v. Hoffman*
3:23-cv-00014-RAM-EAH
Order
Page 6

the accuracy or reliability of the facts underlying his opinions. *Id.* His methodology is clearly reliable, even if it was ultimately incorrect. *Id*.

As to fit, one of the issues in this case is whether the construction performed by Hammerhead was completed in a workmanlike manner, and Mr. Taylor's expert testimony was directly on point. *Id*. at 5. He explained the engineering reliability of the roof design and construction and why, in his opinion, it complied with the V.I. Building Code. Such a finding would show that the roof construction was done in a workmanlike manner, satisfied the warranties implied in the contract, and evidenced Hammerhead's performance under the contract. *Id.*

Hammerhead's Response then discussed the applicability of the Virgin Islands Code. It noted that, at the time of the renovation of the Hoffman's residence in 2017 and 2018, 29 V.I.C. § 292(h) made the IRC 2003 edition and subsequent amendments the applicable building code in the Virgin Islands. *Id*. at 5-6. The Hoffmans' Motion leaned on the objections and disagreements of Mr. Basnight to exclude Mr. Taylor on the basis of reliability and fit. *Id*. at 6. But Mr. Basnight's conclusions were based on his analysis under the 2018 International Building Code which had not been adopted into the V.I. Building or Residential Codes at the time of construction. *Id*. at 6-9 (quoting Mr. Basnight's testimony where he did not know which version of the Building Code was applicable). Hammerhead also posits that the Motion sought to bolster their expert and "back door" the Basnight supplemental expert report that

the Court had excluded. *Id*. at 9-10. It pointed out that the Hoffmans made a strategic decision not to depose Mr. Taylor to understand the reliability and fit of his opinions. *Id.* at 10-13.

### III.     Hoffmans' Reply

In their Reply, the Hoffmans contend that various assertions they made in their Motion were not contested or disputed in Hammerhead's Response. Dkt. No. 149 at 1-3. They claim that the Response is essentially argument by Hammerhead's counsel given that there was no attached affidavit from Mr. Taylor suggesting that any of the literature referenced by counsel was applicable to the analysis. *Id*. at 3-4. They reiterate that Mr. Taylor relied on the wrong legal standard and he must be excluded as Plaintiff's expert. *Id*. at 4.

## DISCUSSION

### I.     Legal Standard

Federal Rule of Evidence 702 governs the admissibility of expert witnesses. It provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702. The Third Circuit has explained that

> Rule 702 embodies a trilogy of restrictions on expert testimony: qualification, reliability and fit. [In re *Paoli R.R. Yard PCB Litigation*, 35 F.3d 717, 741-743 (3d Cir. 1994) (*"Paoli Il"*)] (citing *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, (1993)). Qualification refers to the requirement that the witness possess specialized expertise. We have interpreted this requirement liberally, holding that "a broad range of knowledge, skills, and training qualify an expert." *Id.* Secondly, the testimony must be reliable; it "must be based on the 'methods and procedures of science' rather than on 'subjective belief or unsupported speculation'; the expert must have 'good grounds' for his or her belief. In sum, *Daubert* holds that an inquiry into the reliability of scientific evidence under Rule 702 requires a determination as to its scientific validity." *Paoli II*, 35 F.3d at 742 (quoting *Daubert*, 509 U.S. at 590, 113 S. Ct. 2786). Finally, Rule 702 requires that the expert testimony must fit the issues in the case. In other words, the expert's testimony must be relevant for the purposes of the case and must assist the trier of fact. The Supreme Court explained in *Daubert* that "Rule 702's 'helpfulness' standard requires a valid scientific connection to the pertinent inquiry as a precondition to admissibility." 509 U.S. at 591–92.

*Schneider ex rel. Estate of Schneider v. Fried*, 320 F.3d 396, 404-05 (3d Cir. 2003).

While there is no definitive checklist or test that courts consider when assessing whether an expert's testimony is supported by good grounds, a number of factors have been set forth, including:

> (1) whether a method consists of a testable hypothesis; (2) whether the method has been subjected to peer review; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; (5) whether the method is generally accepted; (6) the relationship of the technique to methods which have been established to be reliable; (7) the qualifications of the expert witness testifying based on the methodology; and (8) the non-judicial uses to which the methods have been put.

*Hammerhead Construction v. Hoffman*
3:23-cv-00014-RAM-EAH
Order
Page 9

*Cohen v. Cohen,* 125 F.4th 454, 462 (3d Cir. 2025) (citation modified). "Although no single factor is dispositive, some analysis of these factors is necessary." *Id.* (citation modified). The inquiry's "overarching subject is the scientific validity and thus the evidentiary relevance and reliability—of the principles that underlie a proposed submission." *Daubert.* 509 U.S. at 594-95. "The focus, of course, must be solely on principles and methodology, not on the conclusions that they generate." *Id.* at 595.

Engineering testimony, such is at issue here, "rests upon scientific foundations, the reliability of which will be at issue in some cases. In other cases, the relevant reliability concerns may focus upon personal knowledge or experience. Our emphasis on the word 'may' thus reflects *Daubert's* description of the Rule 702 inquiry as a flexible one." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999). The factors identified in *Daubert* "may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony. Too much depends upon the particular circumstances of the particular case at issue." *Id.* (citation modified).

The *Daubert* standard "is not intended to be a high one, nor is it to be applied in a manner that requires the plaintiffs to prove their case twice—they do not have to demonstrate to the judge by a preponderance of the evidence that the assessments of their experts are correct, they only have to demonstrate by a preponderance of evidence that their opinions are reliable." *Oddi v. Ford Motor Co.,* 234 F3d. 136, 145 (3d Cir. 2000) (citation modified).

*Hammerhead Construction v. Hoffman*
3:23-cv-00014-RAM-EAH
Order
Page 10

## II.   The *Daubert* Motion

### A.  Qualifications and Fit

The Defendants' Motion explicitly states that they are not challenging Mr. Taylor's qualifications, Dkt. No. 107 at 7, and therefore the first element of the "trilogy of restrictions on expert testimony," *Schneider*, 320 F.3d at 404, is met. While the Defendants set out in a heading that "Mr. Taylor's Opinion does not satisfy the Reliability or Fit standards," Dkt. No. 107 at 8, their argument as to fit is derivative of their argument on reliability. Defendants argue that "Mr. Taylor's opinion is unreliable because he failed to use a reliable methodology which was reliably applied to the actual facts, and as it is not relevant, because it will serve to confuse a jury since he used the wrong legal standard as the basis for his opinion on." [sic] *Id.* Although somewhat confusingly stated, it appears that the Hoffmans are arguing that because Mr. Taylor allegedly used the wrong legal standard (which goes to reliability), his opinion was therefore not relevant and did not satisfy the "fit" factor. *See id*. at 10, 11 (contending that because Mr. Taylor's report was "based on the wrong law and wrong legal standard," it did not meet the reliability or fit standards and "will not be helpful to the trier of fact."). Thus, according to the Hoffmans, if the opinion is not reliable, it also fails to meet the "fit" factor. In addition, Defendants' "fit" argument is utterly conclusory, invoking the "fit" terminology but not applying it to the facts to explain how it is not relevant. *See Hausknecht v. John Hancock Life Ins. Co. of N.Y.*, 614 F. Supp. 3d 168, 175 (E.D. Pa. 2022) (where "a party's argument consists of no more than conclusory assertions, the argument is deemed waived.")

(citation modified). Accordingly, the Court will consider only the reliability element as being at issue in Defendants' Motion.

### B. Reliability

Defendants' reliability argument consists of two prongs: (1) Mr. Taylor's Report was not reliable because he did not engage in the same kind of on-site inspection of the property that Mr. Basnight did, Dkt. No. 107 at 3-4; and (2) Mr. Taylor used the "wrong legal standard" because he "disregarded" certain provisions the IRC, the IBC, and the Virgin Islands Code that, when, "read together," undermine his opinion that certain roof hip beams were not undersized, *id*. at 9, 10 (citing the Basnight Affidavit, Dkt. No. 109-1).

In the Court's view, Defendants' first argument is insufficient to conclude that Mr. Taylor's Report is not reliable. Defendants provide no case law or other support that a personal inspection and measurements must be taken in this circumstance in order for an expert to submit a "reliable" report, and do not indicate how Mr. Taylor's failure to visit the property or take measurements actually undermined his methodology or rendered his Report inadmissible. These points are underscored by the fact that Mr. Taylor relied on the Code provisions and calculations used in the Basnight Report (as explained more below) and by the fact that Defendants do not object to Mr. Taylor's qualifications, where he has the requisite specialized expertise, training, and experience to opine on these matters. *Cf. United States v. Lang*, No. 15-cr-13, 2016 WL 1734087, at *5-6 (D.V.I. Apr. 28, 2016) (expert's review of crime scene evidence report and photographs satisfied the reliability test under *Daubert*,

as testimony would be based on personal knowledge and experience) (citing *Kumho Tire*, 526 U.S. at 152; *United States v. Walker*, 657 F.3d 160, 176 (3d Cir. 2011) (referring to *Kumho Tire* and opining that "the relevant reliability concerns may focus on personal knowledge or experience") (citation modified); and Fed. R. Evid. 703). The Defendants are free to point out at trial that Mr. Taylor never visited the property and never took his own measurements, allowing the jury to assess how much weight to give his conclusions.

As to Defendants' second argument, they emphasize that Mr. Taylor used the "wrong legal standard" and cite numerous cases where courts ruled that the use of the "wrong legal standard" for issues such as loss causation was grounds to exclude all or part of an expert's report. Dkt. No. 107 at 10-11. *See, e.g., Hebert v. Lisle Corp.*, 99 F.3d 1109, 1117 (Fed. Cir. 1996) (expert's "incorrect statement of law" regarding patent issue led to reversal of district court judgment); *In re Apple Inc. Sec. Litig.,* No. 19-cv-2033, 2023 WL 4556765, at *10 (N.D. Cal. July 17, 2023) (excluding sentence in expert report that misrepresented legal standard for loss causation). The problem surrounding this argument is that Mr. Basnight's 2021 Report, Dkt. No. 108-1, never referred to the sections of the Virgin Islands Code (primarily 29 V.I.C. § 311(I)) and IRC Section R301 and 802, undergirding the Hoffmans' argument in their Motion to Exclude that Mr. Taylor used the wrong legal standard in coming to his conclusions.

The Hoffmans' reliability argument is utterly unconvincing based on another, more salient point. Mr. Taylor's Report, Dkt. No. 107-1, explicitly accepted the *same design loads,*

*Hammerhead Construction v. Hoffman*
3:23-cv-00014-RAM-EAH
Order
Page 13

*Code provisions and calculations* used by Mr. Basnight in his Report. *Id.* at 1 (accepting Mr. Basnight's use of "ASCE 7-16 Minimum Design Loads for Buildings and Other Structures, along with the 2018 version of the International Residential Code as well as the current 2021 International Building Code" and "The calculations presented in [Mr. Basnight's Report] lists the roof slope as 22.6 degrees or approximately 5:12."). Mr. Taylor even stated that while he did not agree with the method Mr. Basnight used to calculate wind loads, he would "use the same loads to avoid unnecessary conflicts." *Id.* at 5. Thus, Mr. Taylor used the *same wind loads* and Code provisions relied on by Mr. Basnight to arrive at his conclusions, and Defendants do not contend that the measurements, Code provisions, and wind loads used in *Mr. Basnight's* Report were in any way "unreliable" under Rule 702. Accordingly, any argument based on the purported "wrong legal standards" used in Mr. Taylor's Report, which were *explicitly based on Mr. Basnight's use of the same design criteria and Code Sections*, would also fail. It certainly does not appear that the Hoffmans are prepared to undercut and exclude Mr. Basnight's Report as "unreliable" based on his use of the same allegedly "wrong legal standards."

    In fact, the Hoffmans' "wrong legal standards" argument is based on information contained in Mr. Basnight's accompanying Affidavit to the Motion to Exclude, Dkt. No. 109-1. That Affidavit, in turn, is based on information included in Mr. Basnight's Supplemental Expert Report, Dkt. No. 69-1. On March 29, 2024, Defendants sought to file out of time a 147-page Supplemental Expert Report from Mr. Basnight, dated that same day. Dkt. No. 69. In the

*Hammerhead Construction v. Hoffman*
3:23-cv-00014-RAM-EAH
Order
Page 14

Supplemental Report, Mr. Basnight responded to Mr. Taylor's Report, further critiquing Mr. Taylor's conclusions. Dkt. No. 69-1 at 2. In an expanded 2½ page section entitled "Building Code Discussion" (compared with a one-paragraph description in his original Report), Mr. Basnight referred to specific provisions of the Virgin Islands Building Code, including 29 V.I.C. § 311(I), and other provisions of the IRC and IBC (not included in his original Report) that, inter alia, set a basic wind speed of 145 mph as a minimum standard for structures to withstand in the Virgin Islands. *Id.* at 3. The Court denied Defendants' motion to file the Supplemental Report out of time, based on the Amended Scheduling Order's unequivocal statement that no extensions would be permitted and the failure of the Hoffmans to show good cause for the late filing. Dkt. No. 72. Defendants did not object to the April 2024 Order, which excluded the information in the Supplemental Report from this case.

Mr. Basnight's Affidavit expands on statements he made in the Supplemental Report, but never made in his original Report. The Affidavit provides that "when all of these Code provisions are read together," 29 V.I.C. § 311(I) requires any structure to withstand at least 145 mph winds. Dkt. No. 109-1 at 7. This conclusion was repeated in the Motion to Exclude. Dkt. No. 107 at 10. The Affidavit concludes that because Mr. Taylor did not use § 311(I) and apparently other of the newly-cited provisions, he used the wrong standard in forming his opinion. *Id.* at 7-8. While wind loads were considered in Mr. Basnight's Report based on various Code provisions, which Mr. Taylor's Report adopted, 29 V.I.C. § 311(I) was not mentioned in Mr. Basnight's Report or Mr. Taylor's, and was not an issue. This is a new

*Hammerhead Construction v. Hoffman*
3:23-cv-00014-RAM-EAH
Order
Page 15

argument emanating from the *excluded* Basnight Supplemental Report and the Basnight Affidavit. In the Court's view, Defendants' attempt to sidestep the Court's ruling excluding the Supplemental Report and their effort to repackage it, clothed in the garb of an Affidavit in support of a Motion to Exclude, and put it before the Court for its consideration, is prejudicial to Plaintiff, as the Court has excluded that information. *Cf. Patriot Contracting, LLC v. Star Ins. Co.*, No. 15-cv-6634, 2018 WL 10797881, at *4 (E.D. La. Mar. 21, 2018) (excluding supplemental report and holding that no witnesses may rely on information contained in that report and not timely disclosed elsewhere); *Autoforge, Inc. v. Am. Axle & Mfg., Inc.*, No. 02-01265, 2008 WL 65603, at *11 (W.D. Pa. Jan. 4, 2008) (excluding lay opinion testimony because the witness's testimony relied, inter alia, on a previously excluded expert report).

The Court concludes that the wrong legal standard argument is inapposite to the *Daubert* reliability prong in this case because the points raised in the Hoffmans' Motion were not at issue in Mr. Basnight's Report, upon which Mr. Taylor's Report was based, and are based on excluded expert evidence.[1] Accordingly, the Court declines Defendants' invitation to exclude Mr. Taylor's Report/testimony on the basis that he used the "wrong legal standard" and thus it is unreliable.

---

[1] As a result, the Court does not have to decide what the correct legal standard would be and whether either expert used the correct standard. Therefore, the Court will not address the factors set forth in *Cohen,* 125 F.4th at 462, to determine if Mr. Taylor's testimony is reliable. In any event, most of those factors are inapplicable in this context.

*Hammerhead Construction v. Hoffman*
3:23-cv-00014-RAM-EAH
Order
Page 16

In their Motion, Defendants actually take issue with some of Mr. Taylor's *conclusions* (i.e., that the structural sizes of the main hipped roof required no remedial action) that they wish to exclude from the record. The disagreement over conclusions is grist for cross-examination, not exclusion, as it goes to the weight to be accorded Mr. Taylor's Report/testimony, not its admissibility. *See Daubert*, 509 U.S. at 595 (The focus, of course, must be solely on principles and methodology, not on the conclusions that they generate."); *see id.* at 596 (the weight and credibility of an expert's testimony may be challenged through "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof."); *Oddi,* 234 F3d. at 145 (*Daubert* standard "is not intended to be a high one," and plaintiffs do not have to demonstrate that the assessments of their experts are correct, but only that they are reliable); *In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Pracs. & Prods. Litig.,* 509 F. Supp. 3d 116, 168 (D.N.J. 2020) ("In the end, Defendants and their experts may disagree with Plaintiffs' . . . experts' assessment . . . , but that does not render their opinions unreliable under *Daubert*."); *In re Indus. Silicon Antitrust Litig.,* No. 95-1131, 1998 WL 1031507, at *3 (W.D. Pa. Oct. 13, 1998) ("Although couched in the appropriate language, defendants' challenges are actually directed at his conclusions, not his methodologies.").

*Hammerhead Construction v. Hoffman*
3:23-cv-00014-RAM-EAH
Order
Page 17

## CONCLUSION

For the reasons set forth above, it is hereby **ORDERED** that Defendants' Motion to Exclude Richard G. Taylor from Testifying as Plaintiff's Expert Witness, Dkt. No. 107, is **DENIED**.

ENTER:

Dated: February 4, 2026

/s/ Emile A. Henderson III
EMILE A. HENDERSON III
U.S. MAGISTRATE JUDGE